IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LA'VERN WILLIAMS, ) | CASE NO. 1:21-CV-02195-DAR |
| ) | |
| Plaintiff, ) | JUDGE DAVID A. RUIZ |
| ) | UNITED STATES DISTRICT JUDGE |
| v. ) | |
| ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY ) | CARMEN E. HENDERSON |
| ADMINISTRATION, ) | |
| ) | **REPORT & RECOMMENDATION** |
| Defendant, ) | |

## I. Introduction

Plaintiff, La'Vern Williams ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Commissioner's final decision be VACATED AND REMANDED for further consideration consistent with this opinion.

## II. Procedural History

Claimant filed two applications for SSI prior to this action. First, he filed an application on December 20, 2011 and was denied after a hearing on August 6, 2013. (ECF No. 8, PageID #: 160). He did not file an appeal. Claimant filed his next application on April 20, 2016, alleging an onset date of December 1, 2011. (ECF No. 8, PageID #: 160). The application was denied initially and on reconsideration. (ECF No. 8, PageID #: 160). Claimant then filed a written

1

request for a hearing on November 21, 2016 and testified before an administrative law judge ("ALJ") on March 8, 2018. (ECF No. 8, PageID #: 160). At the hearing, Claimant was represented by counsel, and an impartial vocational expert testified. (ECF No. 8, PageID #: 160). The ALJ issued an unfavorable opinion on August 8, 2018, and Claimant appealed his application to the Appeals Council. (ECF No. 8, PageID #: 96). They denied review on May 13, 2019. (ECF No. 8, PageID #: 96).

This case relates to Claimant's third application for SSI. On June 3, 2019, he filed an application for SSI, alleging a disability onset date of December 1, 2011. (ECF No. 13 at 1). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an ALJ. (ECF No. 13 at 1). On August 13, 2020, an ALJ held a hearing, however, there was no audio recording of the hearing, so a second hearing was rescheduled via telephone for December 10, 2020. (ECF No. 8, PageID #: 95). At the second hearing, Claimant, who was represented by counsel, testified alongside an impartial vocational expert. (ECF No. 8, PageID #: 95). The ALJ issued a written decision on February 3, 2021 finding Claimant was not disabled. (ECF No. 8, PageID #: 92). In her decision, the ALJ noted that she would not reopen the previous ALJ's decision and would instead consider a disability period beginning August 27, 2015. (ECF No. 8, PageID #: 95–96). The ALJ's decision became final on September 24, 2021, when the Appeals Council declined further review. (ECF No. 8, PageID #: 25).

Claimant filed his Complaint on November 18, 2021 to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos.13, 14). Claimant asserts the following statement of issues:

> (1) Whether substantial evidence supports the residual functional capacity assessment as determined by the Administrative Law Judge.

2

>    (2) Whether the Administrative Law Judge performed a proper symptom analysis with respect to the plaintiff's pain complaints.
>
>    (3) Whether medical evidence submitted subsequent to the hearing is new and material evidence warranting remand.

(ECF No. 13 at 1).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing: "The claimant reported disability from a combination of issues, including leg, shoulder, and back pain, the need to use a cane for walking/standing, bilateral leg weakness, and difficulty with all exertion and postural activities. He also reported issue with depression and being in crowds." (ECF No. 8, PageID #: 105).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> The record supports the "plan" for a "cane, quad or three prong" on June 25, 2020 (C17F/119- 120). The claimant received a right knee intraarticular steroid injections in the right knee (C18F/6). The imaging of the claimant left ankle from 2017, 6 years status post ORIF, shows, progressive healing of fractures of distal tibia and fibula, internal fixation of distal tibia, and no significant changes in alignment (C2F/13). The record contains reference to imaging showing mild degenerative changes in the cervical spine (2F/144). The record supports a height, weights, and body mass index ("BMI") scores consistent with the diagnosis of obesity. (See e.g., C11F/13).
>
> Just prior to the period at issue, on April 19, 2018, the claimant had no edema in the lower extremities, which was notable due to his past trauma and related chronic swelling (C2F/11). At exam on January 11, 2019, his gait was normal and he had no deformities throughout (C6F/24). On March 20, 2019, the claimant was physically unremarkable throughout, including normal neurological signs, breathing, and cardiovascular signs (C3F/6).

> On August 19, 2019, the claimant had edema in the left lower leg, and he was otherwise physically unremarkable throughout (C5F/8).
>
> At exam on January 22, 2020, the claimant had tenderness to palpation of the knee, anterior lower left leg and ankle; full range of motion in the legs and ankles bilaterally, with mild crepitus; 4/5 strength in the knees bilaterally; 3/5 strength in the left ankle, and 5/5 strength in the right ankle; back range of motion in limited by pain and body habitus; and unremarkable reflexes, sensation, cardiovascular, and pulmonary findings (C10F/4). At exam on February 4, 2020, he had some reduced strength in the lower extremities and an antalgic gait (C11F/8-9). At exam on February 5, 2020, he had some pain with cervical range of motion; he had decreased left shoulder range of motion overhead; he had positive straight leg raise testing bilaterally; he had pain in the right knee joint; he had mild pain to palpation in the spine; he had no sensory loss on palpation; he had good coordination and muscle stretch reflexes in the bilateral upper and lower extremities; he had no sensation loss, and his gait was antalgic (C11F/13-14).
>
> However, at exam on March 4, 2020, he had normal range of motion, strength, sensation and muscle tone throughout, his gait was unremarkable, and he had unremarkable pulmonary and cardiovascular findings (C12F/12-13). At exam on September 28, 2020, he had some tenderness to palpation in the lumbar spine, thoracic spine, right knee pain, an antalgic gait, and moderate swelling in the left lower extremity; however, his motor strength was 5/5; his sensation was intact to light touch throughout; his breathing effort and sounds were unremarkable; and he had good range of motion in his neck (C16F/4). This evidence supports physical functional limitations, but not to the extent alleged.

(ECF No. 8, PageID #: 106).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has the following severe impairments: obesity; degenerative disc disease of the spine; sleep apnea; degenerative joint disease of the right knee and left shoulder; major depressive disorder; anxiety disorder; and post-traumatic stress disorder ("PTSD") (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of

4

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant [is] able to sit for 6 hours, however, must have the option to alternate to standing position for 3 minutes after every 30 minutes of sitting; stand for 6 hours, however, must have the option to alternate to sitting for 5 minutes after every 30 minutes of standing; walk for 6 hours, however, must have the option to alternate sitting for 5 minutes after every 30 minutes of walking; use foot controls on the right frequently; never operate foot controls with the left foot; operate hand controls with the left hand frequently; reach overhead to the left frequently; reach frequently on the left in all other directions; handle and finger frequently on the left; climb ramps and stairs occasionally; never climb ladders, ropes or scaffolds; occasionally balance, kneel, stoop, and crouch; never crawl; work at unprotected heights occasionally; never have exposure to moving mechanical parts; occasionally operate a motor vehicle; occasionally have exposure to weather, humidity, wetness, dusts, odors fumes, pulmonary irritants, extreme cold, extreme heat, and vibration; perform simple routine, repetitive tasks, but not at a production rate pace (e.g., assembly line work); make simple work-related decisions; and have occasional interactions with coworkers, supervisors, and the public.

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 3, 2019, the date the application was filed (20 CFR 416.920(g)).

**V. Law & Analysis**

   **A. Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step

five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises three issues on appeal. First, he argues substantial evidence does not support the RFC because he is unable to comply with the walking and standing restrictions of "light work" and that the ALJ should have included cane use. (ECF No. 13 at 16, 18–19). Claimant contends that the ALJ improperly rejected his subjective allegations of pain. (ECF No. 13 at 20–21). Finally, he argues that new and material post-hearing evidence warrants remand. (ECF No. 13 at 24).

The Court finds merit in Claimant's second argument that the ALJ improperly rejected his subjective complaints of pain. The ALJ summarized her findings regarding Claimant's subjective complaints:

> The claimant reported using a cane to assist with ambulation from "excruciating pain" onset in 2009; however, he also denied that he had any chronic pain interventions in the past (C11F/11). It seems inconsistent for the claimant to have alleged excruciating pain in 2009 and to have not sought pain management services prior to February of 2020.

(ECF No. 8, PageID #: 107). Clamant argues that the ALJ's "cursory review [of his subjective testimony] ignores that the medical evidence supports a finding of disabling pain." (ECF No. 13 at 20). He cites evidence demonstrating pain and claims the ALJ "played doctor" by noting inconsistencies between his pain complaints and failure to pursue treatment options. (ECF No. 13 at 21). Finally, Claimant argues the ALJ failed to consider the effects of his obesity on pain. (ECF No. 13 at 21). The Commissioner claims that substantial evidence supports the ALJ's assessment of Claimant's allegations and that the ALJ discussed several Social Security Ruling ("SSR") 16-3p factors to assess Claimant's credibility: lack of objective support, his inconsistent

complaints, and treatment history. (ECF No. 14 at 14). The Commissioner specifically references several reports the ALJ discussed, arguing they show "unremarkable" physical exams. (ECF No. 14 at 14). Contrary to Claimant, the Commissioner also argues that the ALJ considered obesity's effect on pain. (ECF No. 14 at 15).

The evaluation of claimants' subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, *5–*7 (2017). Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) other treatment for relief of pain or other symptoms; (6) any additional measures to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. 2017 WL 5180304, at *7–*8.

The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and

effectively in an age-appropriate manner." SSR 16-3p, 2017 WL 5180304, at *8. The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), report and recommendation adopted by 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the ALJ discounted Claimant's testimony only because he claimed to have experienced excruciating pain since 2009 but waited until February 2020 to receive pain management services. (ECF No. 8, PageID #: 107). She cited a page in Exhibit C11F to support this finding. (ECF No. 8, PageID #: 107 (citing PageID #: 1051)). Exhibit C11F refers to different types of pain Claimant experienced over three decades including lower back pain for thirty years, pain since a 2009 tibia and fibula fracture, right shoulder pain for the past seven to eight years, and knee pain for the past two years. (ECF No. 8, PageID #: 1051). The ALJ found that the record—which noted Claimant "has never had any chronic pain interventions in the past"—was inconsistent with his claims of excruciating pain since the 2009 fracture. (ECF No. 8, PageID #: 107). She implied that if Claimant's pain was as severe as he alleged, he would have sought treatment sooner. However, the ALJ failed to recognize that Exhibit C11F notes that Claimant was taking an opioid medication. (ECF No. 8, PageID #: 1051). In fact, the ALJ never mentions the opioid prescription in her decision, even though this is an SSR 16-3p factor and

9

Claimant began taking the medication at least eleven months before his first chronic pain intervention appointment in February 2020. (ECF No. 8, PageID #: 918). This is inconsistent with the ALJ's finding that Claimant never sought treatment for his pain before February 2020, which is the sole basis for her credibility determination.

The ALJ's finding also is inconsistent with the medical records, which show that Claimant's pain increased around 2013 and 2018, ultimately requiring Claimant to seek treatment in 2019. (ECF No. 8, PageID #: 918 (showing an opioid prescription as early as March 2019), 1051 (listing sources of pain beginning around 2013 and 2018)). This undermines the ALJ's implication that Claimant endured the same level of pain for over ten years before randomly seeking treatment. The ALJ fails to discuss these additional sources of pain and how they may have contributed to Claimant's subjective complaints.

Furthermore, although the ALJ stated she reviewed the SSR 16-3p factors, the Court finds that the record does not support this contention and she "insufficiently explained" her reasons for discrediting Claimant's subjective testimony about pain. Aside from the ALJ's inconsistency finding, she did not discuss any other SSR 16-3p factors in relation to pain. Nonetheless, the Commissioner argues the ALJ analyzed two additional factors: treatment history and lack of objective support.

The Commissioner contends that the ALJ considered treatment history because she referenced four records where the Claimant's physical exam results where "unremarkable." (ECF No. 14 at 14 (citing ECF No. 8, PageID #: 82)). However, each record notes Claimant's symptoms of pain in the medication history, examination notes, or pain treatment referrals.

The first record the Commissioner cites is from August 2019, and the ALJ found that it demonstrated Claimant was generally "physically unremarkable throughout." (ECF No. 8,

PageID #: 106 (citing PageID #: 786)). However, the ALJ did not recognize that the provider made multiple pain management referrals, acknowledging pain in Claimant's left leg, left shoulder, and lower back. (ECF No. 8, PageID #: 786–87).

The Commissioner next references a January 2020 record the ALJ considered. The record showed full range of motion in the legs and ankles, 4/5 strength in the knees, 3/5 strength in the left ankle, 5/5 strength in the right ankle, and unremarkable reflexes, sensation, cardiovascular, and pulmonary findings. (ECF No. 8, PageID #: 933). However, the provider also noted "tenderness" in Claimant's knee, lower leg, and ankle and limited range of motion in his back due to pain. (ECF No. 8, PageID #: 933).

The third record was from a March 2020 appointment. Although the record does not mention any tenderness or pain, it notes that Claimant was taking Tramadol, an opioid, at the time of the appointment. (ECF No. 8, PageID #: 1064).

The Commissioner's last record is from September 2020. The ALJ noted that the provider found Claimant had 5/5 motor strength, his sensation was intact, his breathing effort and sounds were unremarkable, and he had a good range of motion in his neck. (ECF No. 8, PageID #: 106). However, the examination notes state there is "tenderness on palpation over the lumbar spine . . . . Tenderness over the bilateral lumbar paraspinal muscles, Pain reproduced with flexion of the lumbar spine . . . [and] pain reproduced with extension of the lumbar spine." (ECF No. 8, PageID #: 1095). The notes also state Claimant had "right knee pain" and "moderate swelling" in the left lower extremity, and the provider's "Assessment" portion includes "Chronic pain of right knee" and "Chronic bilateral low back pain with bilateral sciatica." (ECF No. 8, PageID #: 1095). Further, the provider continued Claimant's opioid prescription and planned for pain injections.

11

(ECF No. 8, PageID #: 1095). The ALJ did not reference the opioid prescription or pain injection plan from this record.

These records actually undermine the Commissioner's argument that Claimant's health was "unremarkable." (ECF No. 14 at 14). Further, each record has evidence of pain and/or pain treatment that the ALJ failed to acknowledge.

The Commissioner also argues that the ALJ considered the lack of objective support for pain, another SSR 16-3p factor. But the Court finds no evidence of this in the ALJ's decision, and the Commissioner fails to cite to any portion of the record in support of this contention.

The Court is therefore not convinced the ALJ's finding regarding Claimant's subjective complaints is supported by substantial evidence as the ALJ failed to sufficiently explain her credibility finding or consider the discrepancies between her finding and the records she cites in support of that conclusion. Based on the foregoing, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g). Because remand is warranted on this issue, in the interest of judicial economy, the Court declines to reach the remaining arguments.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that that the Commissioner's final decision be VACATED AND REMANDED for further consideration consistent with this opinion.

Dated: October 20, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).